**116 So.2d 516**

**Jessie KNIGHTEN**

**v.**

**NORTH BRITISH AND MERCANTILE INSURANCE COMPANY, Limited.**

No. 43856.

Dec. 14, 1959.

N. Cleburn Dalton, Baton Rouge, for appellants.

Joseph A. Gladney, Baton Rouge, for plaintiff-appellee.

McCALEB, Justice.

This is one of three consolidated lawsuits filed by plaintiff as the named insured to recover on separate policies of fire insurance covering three houses allegedly owned by him in the Parish of East Baton Rouge, which were destroyed and/or damaged by a fire occurring on May 27, 1954.

The main defenses of the insurers are that plaintiff either burned or caused the premises to be set afire and that he had no insurable interest in the property involved in this case or in the property involved in another suit which is presently pending before the Court of Appeal, First Circuit.

The salient facts of the case are these: Plaintiff's father and mother purchased in indivision, some time after they had been divorced, the East ½ of Block 61, North Baton Rouge. This property fronts on Central Street in the Negro settlement known as Scotlandville. At the death of the father in 1948, plaintiff and his sister, Mabel Knighten Johnson, and his brother, Jimmie Knighten, Jr., each inherited an undivided ⅙th in the tract, being judicially recognized as owners in indivision with their mother, Henrietta Knighten, and sent into possession of the property during August, 1953.

At the time of the father's death, the only improvement on the land was a one-story house known as 1151 Central Street. Sometime prior to 1951, the mother and three children agreed at a meeting at the mother's home, that plaintiff would be permitted to build houses on the property and, during

1951 and 1952, he constructed at his own expense a one-story frame house known as 1153 Central Street on the easternmost section of the land. On September 3, 1952, plaintiff procured a three-year fire and extended coverage insurance policy for $1,500 on this property with General Insurance Company of America.

In 1953, plaintiff built a two-story frame house between the house he had previously built and his mother's house, which was designated for some unexplained reason as 1155 Central Street, the mother's being No. 1151 and the first house 1153.

In December of 1953, the mother and her three children entered into a conventional act of partition of the entire property dividing the land into four separate parcels fronting on Central Street with a stated depth of 780 feet to the rear between parallel lines. These parcels were allotted to the respective co-owners as follows: The easternmost lot measuring 40 feet front and containing the house No. 1153 Central Street was deeded to plaintiff; the adjoining lot to the West, also allegedly measuring 40 feet front on which the two-story house (No. 1155 Central Street) involved in this suit was situated, was transferred to Jimmie Knighten, Jr.; the next adjoining lot to the West, stated to be 187 feet front on which the house No. 1151 Central Street was located, was conveyed to Henrietta Knighten and the balance of the property, which was unimproved, having an alleged frontage of 53.6 feet, was conveyed to Mabel Knighten Johnson.

On January 20, 1954, plaintiff took out a $2,000 policy of fire and extended coverage with defendant herein, North British and Mercantile Insurance Company, Ltd., on the two-story house known as 1155 Central Street for a term of three years. On the same date he procured another fire and extended coverage policy of insurance on the house located at 1151 Central Street but that policy is not involved in the appeals presently under consideration.

Shortly after 3:00 a. m. on May 27, 1954, a fire either started or was set off on the second floor of 1155 Central Street which completely destroyed that house and the one at 1151 Central Street, and partially destroyed 1153 Central Street. The house at 1155 Central Street had been vacant for about ten days before the fire, the doors having been nailed shut and the electricity turned off.

Plaintiff notified the insurance companies of the respective losses but, after its adjuster had caused an investigation to be made by the State Fire Marshal's Office, liability was denied by the insurers, principally on the ground that the fires were of incendiary origin for which plaintiff was responsible.

Following the insurers' rejection of plaintiff's claims, all of the persons who signed the original partition act entered, on Sep-

tember 4, 1954, into another partition agreement of the same property in which they alleged that the first partition was void because of serious error in measurement.[1] In this second partition, it was declared that plaintiff had full ownership of the houses which he had constructed on the land and that he was entitled to all proceeds due under the fire insurance policies.

On May 24, 1955, plaintiff brought separate suits to recover on each of the three policies of insurance mentioned above and demanded penalties and attorneys' fees on the basis that the insurers were arbitrary in their refusal to pay. The cases were consolidated and, after a trial on the merits, judgments were rendered by the district court awarding plaintiff the face amount of the policies in each case, plus penalties and attorneys' fees. Thereafter, the insurers appealed from the judgments, the suits concerning 1153 and 1155 Central Street being taken to this Court, as they were the only ones in which the amount in dispute was over $2,000. The appeal in this case involves the policy covering the property 1155 Central Street and the decision herein will govern the suit on the policy covering 1153 Central Street.

We find no merit in defendant's first contention that plaintiff did not have an insurable interest in the house situated at 1155 Central Street. The testimony of plaintiff and his witnesses, that he built the houses at 1153 and 1155 Central Street with his own money; that he was at all times recognized as sole owner of them and always received the full benefit of their rental, is sufficient to warrant a holding that he had an economic interest in their preservation, free from loss, within the meaning of Section 614 of the Insurance Code (R.S. 22:614) defining insurable interest as follows:

"B. 'Insurable Interest' as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage."

Defendant's position that the partition of December, 1953 vested in plaintiff's brother the full title to the house at 1155 Central Street, as well as the land on which the house stood, would be meritorious in the absence of explanatory evidence. But, here, it is evident from the testimony of plaintiff's witnesses (which the judge believed), that the transfer did not contemplate a change in ownership of the improvements which plaintiff had erected on the jointly owned land but only a division in kind of the undivided ownership of the land

1. It was established at the trial by a surveyor that the entire tract measures only 211.53 feet front on Central Street, instead of 320.6 feet, by a depth of 514.-8 feet, instead of 780 feet.

inherited from the father. Hence, under these circumstances, it cannot fairly be said that plaintiff did not retain an insurable interest in the house built by him with his own money and from which he always collected the rentals.

■■ We further find that, whereas defendant has shown circumstances sufficient to arouse a suspicion that the fire was of an incendiary origin, there is no probative proof that such was the case or that plaintiff set the house afire or caused it to be burned. The only direct indication that plaintiff may have set fire to his houses was contained in a signed statement which Emanuel Dunn, a former tenant at 1155 Central Street, made to a Deputy State Fire Marshal on August 7, 1954. In this statement, Dunn gave a detailed account of the fire and declared, among other things, that he and plaintiff and another person started the fire at 1155 Central Street by throwing a burning coat, which had been soaked in a combustible substance, into the upper story of the house. However, when called as a witness for defendants, Emanuel Dunn, who had meanwhile been charged with arson, repudiated this statement and testified that he had no knowledge whatever as to how the fire started, asserting that, being unable to read and write, he signed the statement as he was confused by the questioning of the Fire Marshal. Defendants, pleading surprise, requested permission of the judge to cross-examine Dunn as a hostile witness but the judge, erroneously we think, refused the request holding that defendant's counsel was not surprised because he had been informed a day or two before the case came to trial that Dunn had retracted his prior statement in an affidavit subscribed to before plaintiff's counsel, acting in his capacity as a Notary Public.[2]

But, notwithstanding the incorrect ruling of the judge, we do not think any useful purpose would be served by remanding the case in order to allow defense counsel to cross-examine Emanuel Dunn, for it is manifest that impeachment of that witness would not establish the defendant's special plea that plaintiff burned down the house.

■ On the other hand, we think it clear that the district judge erred in condemning

2. Under our rules of criminal evidence, which are undoubtedly more stringent than those obtaining in civil cases, a litigant cannot impeach his own witness unless he has been taken by surprise by the testimony of the witness or unless the witness is hostile. See Articles 487 and 488 of the Code of Criminal Procedure (R.S. 15:487, 488). In construing these articles, this Court has declared that, even if the examiner is not surprised by the adverse testimony of the witness, cross-examination and impeachment should be permitted so long as the witness is hostile to the party introducing him and in favor of the other side. See State v. Williams, 185 La. 849, 171 So. 52, the holding in which is directly contrary to the ruling of the trial judge in this case.

defendant for penalties and attorneys' fees. Section 658 of the Insurance Code (R.S. 22:658) provides that an insurer shall be subject to certain penalties and attorneys' fees when it shall arbitrarily, capriciously and without probable cause fail to pay the amount of any claim due within 60 days after receipt of satisfactory proofs of loss from the insured. The evidence indicates that defendant had ample cause for refusing to pay plaintiff's claim. Initially, the public record and assessment rolls revealed that Jimmie Knighten, Jr., was the owner of the house and lot at 1155 Central Street. In view of these records defendant was justified in contesting the claim on the ground that plaintiff was without insurable interest in this property.

Moreover, defendant was entitled to rely on the signed statement of Emanuel Dunn, in which it was declared that he and plaintiff set fire to the house for, if Dunn had testified conformably with his statement, such testimony, together with the evidence of other suspicious circumstances, might have been enough to warrant judgment in favor of defendant.

The judgment appealed from is amended by deleting therefrom the award to plaintiff of penalties and attorneys' fees and, as thus amended, it is affirmed. Plaintiff is to pay the costs of this appeal, all other costs to be borne by defendant.

116 So.2d 520