274 So.2d 213 (1973)
William H. BREWSTER et al., Plaintiffs-Appellees,
v.
MICHIGAN MILLERS MUTUAL INSURANCE COMPANY and Don F. Tucker et al., Defendants-Appellees.
No. 12010.
Court of Appeal of Louisiana, Second Circuit.
February 6, 1973.
*214 Wilkinson, Carmody & Peatross by Arthur R. Carmody, Jr., Shreveport, for defendant-appellant.
Mayer & Smith by Caldwell Roberts, Donald R. Miller, Shreveport, for plaintiffs-appellees.
Before AYRES, BOLIN and HALL, JJ.
BOLIN, Judge.
Carl Brewster, Sr., and his two sons, William H. Brewster and Carl Brewster, Jr., filed suit against Michigan Millers Mutual Insurance Company to recover the proceeds of a fire insurance policy issued to Brewster, Sr., by defendant. This policy, covering a house located on seven acres fronting on Cross Lake, was destroyed by fire on November 7, 1970. After purchase of the policy, but before the fire, Mr. Brewster conveyed the property to his sons and the insurance company, denying he retained an insurable interest, declined to pay the loss. Also made defendants were Don F. Tucker and Tucker Insurance Agency which had issued the policy. From judgment for $15,000 in favor of Brewster, Sr., against Michigan Millers, but rejecting all other claims, defendant insurance company has appealed. Plaintiffs have answered the appeal, asking damages for frivolous appeal, and have also filed a motion to dismiss the appeal. Since the claim against Tucker was rejected and there has been no appeal in respect to that defendant, the judgment as to it is final. For reasons to be assigned we affirm the judgment.
We shall first dispose of the motion to dismiss the appeal grounded on the alleged failure of the appellant to pay all the fees due the trial court at least three days prior to the return date of the appeal, citing Louisiana Revised Statute 13:4445 and the case of Federal National Mortgage Association v. Woods (La.App. 4 Cir. 1972) 263 So.2d 745.
Although R.S. 13:4445 is couched in mandatory language, as is Louisiana Code of Civil Procedure Article 2126 [pre-payment of costs], we think Louisiana C.C.P. Art. 2161 governs in the present situation:
"An appeal shall not be dismissed because of any irregularity, error, or defect unless it is imputable to the appellant. Except as provided in Article 2162, [jurisdiction] a motion to dismiss an appeal because of any irregularity, error, or defect which is imputable to the appellant must be filed within three days, exclusive of holidays, of the return day or the date on which the record on appeal is lodged in the appellate court, whichever is later."
(Emphasis ours)
*215 In the instant case the motion to dismiss was not timely filed, having been filed January 2, 1973, approximately 90 days after the return date, October 2, 1972, and therefore will not be considered by us.
We come next to a discussion of appellee's answer seeking damages for frivolous appeal. The answer, filed January 2, simultaneously with the motion to dismiss, likewise was filed too late for consideration by this court. See Louisiana Code of Civil Procedure Article 2133.
Passing now to the merits, there is no question but that the fire insurance policy was in effect on the day of the fire. The sole question to be answered is whether or not the insured retained an insurable interest in the property so as to be entitled to recover under his policy for the total destruction of the house by fire.
Michigan Millers contends the sale of the land by Brewster, Sr., encompassed the land with all improvements and, as a result, the vendor-insured no longer had an insurable interest in the property. Insurable interest is defined in Louisiana Revised Statutes 22:614 as follows:

* * * * * *
"B. `Insurable interest' as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." (Emphasis ours)
The testimony of Mr. Brewster and his sons establishes that Brewster, Sr., had owned the property for about 15 years, during most of which time he and his wife resided in the house. Approximately a year before the house burned the couple had moved into Shreveport and he had rented the structure for a monthly rental of $85. In August of 1970 he had a conference with his sons, who were desirous of having an interest in the property in order to build retirement homes upon it. It was agreed the father would deed the property to his two sons and this was accomplished in August, 1970. The stated consideration for the conveyance was $7,000 which was paid. Brewster and his sons testified that it was their intent that Brewster, Sr., retain possession and control of the house located on the property, with the right to live in it, rent it to others or to use it in almost any manner he saw fit. He did, in fact, continue to rent it and receive the rentals until November 1, 1970. He was to pay taxes, insurance premiums, make repairs and perform any act necessary to the preservation of the property. Further, it was agreed he would collect the rents and use them without the necessity of accounting for them and could move back into the home at his pleasure. When his tenant moved out on November 1, he commenced repairs at his own expense with the intention of moving into the house. The painter was in the process of painting the exterior when the house was totally destroyed by fire on November 7.
Three or four days prior to the fire Brewster went by the Tucker Agency and talked to a lady employed there. He sought to explain to her either that he had transferred or planned to transfer the property to his sons, but would keep the house for himself and his wife. He asked her whether it would be necessary to procure a new insurance policy and she told him she thought the policy then in effect would be sufficient but she suggested he talk to Mr. Tucker. The following day he spoke with Tucker on the phone and was advised there was no need to issue a new policy. The latter testimony is corroborated by the secretary and by Tucker.
In the beginning of the trial appellant objected to all evidence regarding the oral agreement between Brewster and his sons allowing the father to have the use and benefit of the house and to collect the rents without the necessity for an accounting. However, this evidence was admitted subject to his objection. Initially, we observe the oral evidence was not intended to vary the authentic deed nor to impeach the title to the property now possessed by his *216 sons. Rather, it was introduced to show the facts of an agreement between the parties whereby the insured acquired the right to exercise possession and control over the house sufficient to constitute an economic interest therein. As pointed out by appellees, the insurance company was not relying on the public records at the time of issuance of the policy nor at any time prior to the instant case. Thus, having issued the policy to Brewster, Sr., in return for the recited consideration, the question of an insurable interest is to be determined from the surrounding circumstances.
Appellant cites Lumbermens Mutual Insurance Co. v. Edmister (8 Cir. 1969) 412 F.2d 351, involving the application of Missouri law, wherein the court held plaintiffs, who had purchased the insurance policy when they were fee owners but had sold the property to third persons, no longer had an insurable interest. However, the court went on to say:
"It is axiomatic in Missouri, as in most states, that a valid insurance contract must be based upon an insurable interest. It is true that an insurable interest need not be a fee simple holding or an absolute ownership of property. It may cover a variety of holdings or rights in real and personal property. The Missouri courts recognized this, agreeing with the comment in 44 C.J.S. Insurance § 175, at 870 (1946) that it is not easy to define an insurable interest with precision so as to distinguish it from the class of wagering policies, but that generally a person has an insurable interest when he has such a relation or concern with the subject matter insured that he will derive pecuniary benefit or advantage from its preservation or suffer pecuniary loss or damage from its destruction. American Central Ins. Co. v. Kirby, 294 S.W. 2d 556 (Mo.App.1956) quoted with approval the case of Crossman v. American Ins. Co., 198 Mich. 304, 164 N.W. 428, 429, L.R.A.1918A, 390 (Mich.1917), which in discussing an insurable interest said:
"`* * * [An insurable interest] may be a special interest entirely disconnected from any title, lien, or possession. If the holder of an interest in property will suffer direct pecuniary loss, by its destruction, he may indemnify himself therefrom by a contract of insurance. The question is not what is his title to the property, but rather, would he be damaged pecuniarily by its loss.'"
It should be noted that in the above cited case the vendee had procured insurance on the building subsequently destroyed by fire and was paid the full amount of his coverage. While not determinative of the issue, nevertheless it indicates that the interest of plaintiff (right of occupancy, etc.) was not shown to be a right the loss of which would cause pecuniary damage.
Appellant cites two other cases, one emanating from Missouri and another from Tennessee, in each of which the vendor conveyed property to a son in order to avoid it being seized by creditors or to avoid dissipation of assets by a wife. We find these cases inappropriate to the instant case. Likewise, we find the case of Macarty v. Commercial Insurance Company, 17 La. 365 (1861) fails to show plaintiff had reserved an interest in the property [donated to a friend] sufficient to constitute an insurable interest.
While we have been cited to no Louisiana case, nor have we found any, identical to the one before us, we think the decision in Knighten v. North British and Mercantile Insurance Company, 238 La. 767, 116 So.2d 516 (1959) reflects the attitude of the Louisiana Supreme Court with regard to the nature of an insurable interest:
"We find no merit in defendant's first contention that plaintiff did not have an insurable interest in the house situated at 1155 Central Street. The testimony of plaintiff and his witnesses, that he built the houses at 1153 and 1155 Central Street with his own money; that he was at all times recognized as sole owner of *217 them and always received the full benefit of their rental, is sufficient to warrant a holding that he had an economic interest in their preservation, free from loss, within the meaning of Section 614 of the Insurance Code (R.S. 22:614) defining insurable interest as follows:
"`B. "Insurable Interest" as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.'
"Defendant's position that the partition of December, 1953 vested in plaintiff's brother the full title to the house at 1155 Central Street, as well as the land on which the house stood, would be meritorious in the absence of explanatory evidence. But, here, it is evident from the testimony of plaintiff's witnesses (which the judge believed), that the transfer did not contemplate a change in ownership of the improvements which plaintiff had erected on the jointly owned land but only a division in kind of the undivided ownership of the land inherited from the father. Hence, under these circumstances, it cannot fairly be said that plaintiff did not retain an insurable interest in the house built by him with his own money and from which he always collected the rentals."
The same result was reached in the companion case of Knighten v. General Insurance Company of America, 238 La. 778, 116 So.2d 520 (1959) in which plaintiff sued a different insurer under a policy covering another house on the same lot as that in the quoted case.
We find plaintiff had a substantial economic interest in the preservation of the house which he had built on the property and over which he retained the right of occupancy and the right of control, including collection of rents. Further, there is a complete lack of evidence that Brewster, Sr., was attempting to circumvent any law or that there were any elements of a wagering contract in the policy.
Having found Brewster, Sr., had an insurable interest and that the insured house was totally destroyed by fire, we conclude that under the Louisiana valued policy law [R.S. 22:695, subd. A] this plaintiff is entitled to recover the $15,000 face amount of the policy.
The judgment of the lower court is affirmed at appellant's cost.