387 So.2d 1261 (1980)
Ivory M. STOKES
v.
REPUBLIC UNDERWRITERS INSURANCE COMPANY.
No. 13253.
Court of Appeal of Louisiana, First Circuit.
June 9, 1980.
R. Ryland Percy, Tureau, Percy & Mire, Gonzales, for plaintiff and appellee.
Carey J. Guglielmo, Dale, Owen, Richardson, Taylor & Matthews, Baton Rouge, for defendant and appellant.
Before EDWARDS, LEAR and WATKINS, JJ.
*1262 WATKINS, Judge.
This appeal arises from a claim under a fire insurance policy.
Ivory M. Stokes and her teenage children lived in a small frame house in Ascension Parish owned by her aunt who resided in New York. Stokes obtained a fire insurance policy on the house and its contents from Thomassie Malbrough Agency providing $15,000.00 on the dwelling and $5,000.00 on the contents. The policy covered the period from March 30, 1977 to March 30, 1978. A fire occurred at about 4:00 a. m. on September 26, 1977. Republic Underwriters Insurance Company, the insurer, through its adjuster Steve Day, investigated the fire and denied the claim. A proof of loss was submitted to Republic on or about March 15, 1978. Stokes filed a petition on February 9, 1978, seeking $20,000.00 for the dwelling and contents, $5,000.00 in penalties, plus reasonable attorney's fees of one-third of all monies collected.
On July 24, 1979, the trial court rendered judgment for plaintiff in the sum of $20,000.00, penalties of $5,000.00, and attorney's fees of $8,000.00. We affirm the judgment as to the principal sum, but reverse with respect to penalties and attorney's fees.
On appeal, Republic contends that Stokes had no insurable interest and, in the alternative, that the fire was started by arson.

INSURABLE INTEREST
The record reveals that Stokes had lived in the house that burned since 1968, with her husband and four or five children. At first she lived in the house with her grandmother, who apparently owned the house, and when her grandmother died, her aunt, Miss Whitehurst, who lived in New York, gave her permission to stay in the house, and do whatever she wanted to do with it, as long as she lived. She never paid rent on the house.
It appears that Stokes had an insurable interest. The salient portion of the definition of "insurable interest" found in LSA-R.S. 22:614 states that it means "any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage." Here, Stokes had a lawful and substantial economic interest in the house, as she had a lawful and agreed right to stay in the house as long as she lived, and would necessarily be subject to a pecuniary loss if she were unable to live in the house for life. Although she could not demand to stay in the house, she quite obviously suffered a pecuniary loss. Thus, she had an insurable interest.[1]
An earlier Louisiana case, Brewster v. Michigan Millers Mutual Ins. Co., 274 So.2d 213 (La.App. 2nd Cir. 1973)[2] found that an insurable interest existed although the insured was not the owner of the property which was destroyed by fire. The facts of that case, which are somewhat similar to the facts of the present case, were briefly stated in the following paragraph of the Court of Appeal's opinion:
"The testimony of Mr. Brewster and his son establishes that Brewster, Sr., had owned the property for about 15 years, during most of which time he and his wife resided in the house. Approximately a year before the house burned the couple had moved into Shreveport and he had rented the structure for a monthly rental of $85. In August of 1970 he had a conference with his sons, who were desirous of having an interest in the property in order to build retirement homes upon it. It was agreed the father would deed the property to his two sons and this was accomplished in August, 1970. The stated consideration for the conveyance was $7,000 which was paid. Brewster and his sons testified that it was their intent that Brewster, Sr. retain possession and control of the house located *1263 on the property, with the right to live in it, rent it to others or to use it in almost any manner he saw fit. He did, in fact, continue to rent it and receive the rentals until November 1, 1970. He was to pay taxes, insurance premiums, make repairs and perform any act necessary to the preservation of the property. Further, it was agreed he would collect the rents and use them without the necessity of accounting for them and could move back into the home at his pleasure. When his tenant moved out on November 1, he commenced repairs at his own expense with the intention of moving into the house. The painter was in the process of painting the exterior when the house was totally destroyed by fire on November 7." (274 So.2d 213, 215)
The court in finding that there was an insurable interest summarized its reasoning as follows:
"We find plaintiff had a substantial economic interest in the preservation of the house which he had built on the property and over which he retained the right of occupancy and the right of control, including collection of rents." (274 So.2d 213, 217)
Similarly, Stokes in the present case had a substantial economic interest in the preservation of the house, and she had the right of occupancy. Clearly, she had an insurable interest.

ARSON
Ralph Newell, a special agent for INS Investigations Bureau, was called by defendant as an expert witness. He testified that the fire appeared to have started at three points in the house with no major fire damage between the points of origin, and to have spread upward in a "V" shape. The fire had damaged a 10" × 10" sill, a type of damage that was unusual in an accidental fire. He concluded that an "accelerant" was involved. However, he did not take samples to determine the type of accelerant, as he arrived at the scene of the fire too late. Furthermore, he admitted on cross-examination that he did not know what was in the attic directly above the points where the fire started on the floor. He stated that he could not say without a doubt what caused the fire; he would only give an opinion, which was, that the fire had been started intentionally.
Stokes' testimony is that she and her five children were in the house on the night of the fire. Stokes was in the living room and the children were in their rooms. About 4:00 in the morning Stokes smelled smoke, went out on the back porch, and saw her neighbors had a fire burning, which appeared to be a trash fire. She went back in the living room and lay on the couch, and dozed. When she awoke, she saw smoke coming from her bedroom. She got her children up and out of the house. It was not until she had gone out of the house that she saw flames. She attempted to put out the fire with a hose, and her mother called the fire department.
We are not prepared to say that the testimony of Newell successfully refutes the testimony of Stokes, who was an eyewitness. Newell admitted that he had inspected the scene of the fire only on the week of New Year's Day, 1978, some three months after the date of the fire (September 26, 1977). He arrived at the scene too late to take samples of the accelerant that he testified was used. He admitted that he was uncertain of his conclusions, and that, if the fire had been set, he did not know who had set it.
On the record as presented, we do not think arson has been established. Too many doubts are present. The inspection of Newell came too late. Furthermore, it is significant to note that no criminal charge of arson was ever filed. The trial court did not assign written reasons, but we must assume it found there was no arson, and we cannot say this finding was manifestly erroneous. See Arceneaux v. Adams, 366 So.2d 1025 (La.App. 1st Cir. 1978).
We, therefore, hold that Stokes is entitled to the policy amount of $20,000.00 ($15,000.00 for the house and $5,000.00 for the contents). We believe that there was *1264 sufficient question as to whether or not there had been arson and whether Stokes had an insurable interest to justify defendant's failure to pay Stokes' claim in the absence of a judgment of court. We, therefore, deny penalties and attorney's fees.
The judgment of the trial court is affirmed in awarding Ivory M. Stokes the policy sum of $20,000.00, and reversed in awarding Ivory M. Stokes $5,000.00 in penalties and $8,000.00 in attorney's fees, all costs to be borne by defendant-appellant.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
LEAR, Judge, dissenting.
The weight of authority holds that a contract of fire insurance is one in indemnity, hence recovery presupposes that the insured had an insurable interest in the property insured and recovery is limited to the extent of actual interest. In the case at bar, plaintiff proved no actual interest, yet she was allowed to recover the full amount of the policy. To hold that a bare licensee has an interest capable of such ascertainment as to create an insurable interest defeats the reason behind the "insurable interest doctrine."
Plaintiff introduced a mortgage she and her husband obtained on the property by virtue of a power of attorney from the owner, but there is nothing in the record to indicate how much, if any, of the $2,000.00 loan was used to improve the dwelling. Whatever interest plaintiff may have had in the property is speculative, contingent, and incapable of computation. An insurable interest must exist both at the time the policy is written and at the time of loss. Brown v. State Farm Fire and Casualty Co., 363 So.2d 967 (La.App. 3rd Cir. 1978). Plaintiff cites Carroll v. American Employees Ins. Co., 241 So.2d 538 (La.App. 2nd Cir. 1970). In Carroll, plaintiff insured his deceased mother's property. The court held that he, as an heir, had an insurable interest and that the policy was written on his behalf and on behalf of his minor brothers and sisters, all of whom were heirs and therefore had an insurable interest.
The policy in question was written consistent with the provisions of LSA-R.S. 22:691 and therefore was a standard Louisiana fire insurance policy. Such a contract, to be valid, requires that the insured have an insurable interest at its inception and at the time of loss. Davis-Wood Lumber Co. v. Security Ins. Co. of New Haven, Conn., 154 So. 767 (La.App.). In order to show such interest, there must be shown that the loss exposed the insured to liability of a direct and immediate or potential loss. Rube v. Pacific Ins. Co. of N. Y., 131 So.2d 240 (La.App. 1st Cir. 1960).
Plaintiff testified that after taking out the policy, she called the agency and told the agent that she did not own the property and he assured her that it did not matter. This is difficult to believe since a tenant policy could have been written to cover plaintiff's belongings in the dwelling. It should further be noted that the sworn proof of loss signed by plaintiff shows plaintiff as the owner (P-4).
Be that as it may, should the facts establish that both the insurer and the insured were acting in an honest, but erroneous, belief that plaintiff had an insurable interest in the property could not create such an interest which is essential to support the contract. Davis-Wood Lumber Co. v. Security Ins. Co. of New Haven, Conn., cited above.
As stated above, inasmuch as a property insurance contract is one in indemnity, it cannot cover more than the insurable interest that the insured has in the property. In re Clover Ridge Planting and Mfg. Co., 178 La. 302, 151 So. 212.
An insurable interest in the insured property at the time of the loss is protected by the policy; but recovery is limited to the value of that interest. The sum mentioned in the policy is the extent of the insurer's liability and not the measure of assured's claim. MaCarty v. Commercial Ins. Co., 17 La. 365. When the name of the person intended to be insured is specific in the policy, such insurance can be applied only to his own proper interest. LSA-R.S. 22:615.
*1265 Plaintiff has shown no insurable interest in the dwelling sought to be insured; therefore the contract is null and void insofar as the building is concerned.
I respectfully dissent.
NOTES
[1] See Comment, 1 Loyola L.Rev. 105 (1941), which discusses a Virginia case that reached the same result under similar facts.
[2] See brief discussion of this case, Work of the Louisiana Appellate Courts for the 1972-1973 Term, Insurance (McKenzie), 34 La.L.Rev. 197, 348, 349 (1974), in which the reasoning of Brewster is considered approvingly.