FOGG, Judge.
This appeal arises out of an action against an automobile insurance company to recover for the theft of an insured vehicle, and raises the issue of whether the insured had an insurable interest.
Brian and Michael Giddens filed suit against United Services Automobile Association (USAA)[1] to recover insurance proceeds for the theft of a Blazer which USAA insured. Michael was the named insured on the USAA policy, and his younger brother, Brian, who was then twenty-two, owned the Blazer. USAA refused to pay for the loss and refunded the insurance premiums paid on the Blazer, contending that Michael did not have an insurable interest and made misrepresentations in obtaining the insurance.
After trial on the merits, the trial court awarded Michael $9,000, the purchase price of the Blazer, together with interest and costs against USAA. From this judgment, USAA appeals, contending that the trial court erred in finding that Michael legitimately obtained coverage for the Blazer, in finding that Michael had an insurable interest, and in awarding damages in an amount not proven at trial.
The testimony at trial revealed that before he bought the Blazer, Brian owned a 1980 Jeep which was insured under Michael’s policy with USAA; Michael was listed as the Jeep’s owner and operator. On October 30, 1990, Brian bought a 1988 Blazer for $9,000, of which he paid $3,000 and his father paid $6,000. Michael lent his father $2,000 toward his father’s portion of the purchase price.[2] Only Brian’s name was on the title. Michael Igcalled USAA to obtain insurance for the Blazer under his policy, which covered two vehicles belonging to Michael and his wife, Barbara, as well as the Jeep. Brian had previously been rejected for coverage by USAA because his driving record was unacceptable. Michael testified that USAA added the Blazer and deleted the Jeep from his policy even after he told them that he would not be the owner or primary operator of the Blazer and that it would not be garaged at his house.
According to the testimony of USAA’s representatives, when an insured phones to make a change to a policy, the policy service representative must ask whether the vehicle is registered to the insured and where it is to be located. USAA’s computer prevents a policy service representative from adding a vehicle not registered to the insured or not garaged at the insured’s address without multiple questions being raised; likewise, where the insured informs the representative that he is only a lienholder, the vehicle cannot be added without multiple questions. Generally, USAA representatives will not add a non-owned vehicle to a policy, even where the insured is a lienholder or mortgagee. The USAA computer records indicate that Michael owned the Blazer, that Michael and Barbara were the operators, and that it would be garaged at Michael’s address. Brian’s name was not mentioned in the computer records. The declarations page lists only Michael and Barbara as operators of the Blazer, and the proof of insurance card listed Michael as the insured.
When Michael was billed for the insurance premiums, he calculated Brian’s portion, and Brian paid that amount either to USAA directly or to Michael. The Blazer was stolen on April 27, 1991.
*829 According to Brian, the Blazer was kept at his house, but Michael had full use of the Blazer any tíme, as did any of his family members. Michael testified that he used the Blazer at his convenience. Both Brian and Michael testified that Michael used the Blazer to help their mother make deliveries for her Christmas shop and to haul building materials for the renovation of his | ¿house. Brian stated that Michael generally helped their mother during the Christmas season, that is, in November and December, while Michael testified that his mother’s primary business season for the Christmas shop was October through December.
According to Brian and Michael, Michael did not have keys to the Blazer; however, Michael told USAA in a recorded statement shortly after the theft that he did have keys. Brian testified that if Michael needed to borrow the Blazer for a few days, Michael had to give him his car to drive in return. Brian stated that Michael kept the vehicle overnight on no more than ten occasions over the six-month period before the Blazer was stolen. Michael testified that on occasion, the Blazer was kept at his house overnight. According to Michael, he used the Blazer between two and three times a week, and more than ten times in the six months Brian had it; however, in a recorded statement taken by USAA shortly after the theft Michael stated that he used the Blazer daily. When asked what loss he sustained when the Blazer was stolen, Michael testified that he could no longer use it for his mother’s Christmas business and he also had to loan his ear to Brian.
Barbara testified that while they borrowed the Blazer often to haul trash and lumber, it was never at their house for more than a day at a time, and that if Michael had time to help his mother by hauling freight from her house to her Christmas shop, he would use the Blazer.
Although ownership of property is not required to recover on an insurance policy covering the property, the insured must have an insurable interest. See Young v. State Farm Fire & Casualty Insurance Co., 426 So.2d 636 (La.App. 1st Cir.1982), writs denied, 433 So.2d 148, 171 (La.1983). According to La.R.S. 22:614,
A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of persons having an insurable interest in the things insured.
B. “Insurable interest” ... means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.
J#the loss of the insured property does not expose the insured to either direct, immediate or potential financial loss or liability, the insured is without an insurable interest. Rube v. Pacific Insurance Co. of New York, 131 So.2d 240 (La.App. 1st Cir.1961). An insurable interest must exist not only at the time the policy is written but also at the time of the loss. Brown v. State Farm Fire & Casualty Co., 363 So.2d 967 (La.App. 3d Cir.1978).
In written reasons for judgment, the trial judge found that Michael had an insurable interest because he made substantial use of the Blazer for his personal use and for making various pickups and deliveries for his mother’s business. The judge then stated, “Clearly Michael had an economic interest in assisting the family business which in turn directly benefitted him.” The judge reasoned that due to the theft, Michael “suffered direct and immediate loss by no longer having access to the Blazer for moving of materials needed for [his] home remodeling,” and “indirect loss because he had to loan his brother his vehicle and could only use his wife’s automobile.” The judge also found that Michael “was charged with the safety and preservation of the Blazer by making sure the insurance premiums were remitted timely,” and that “the payment of premiums evidences Michael’s economic interest.” Finally, the judge stated that Michael had unlimited use of the Blazer.
A court of appeal may reverse a factfinder’s determinations when the appellate court finds from the record that a reasonable factual basis does not exist for the trial court’s findings and the appellate court also determines that the record establishes that the findings are clearly wrong or mani *830 festly erroneous. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880 (La.1993). In this case, the trial judge’s finding that Michael had an insurable interest is clearly wrong. No evidence was adduced at trial showing that Michael had an economic interest in his mother’s business or that it financially benefitted him in any way, nor was any evidence introduced showing that Michael’s mother paid him for making deliveries. Moreover, the requirement Uthat the insured possess an insurable interest at the time of the loss is not satisfied by Michael’s deliveries for the Christmas shop because they took place in November and December, and, thus, were over before the theft of the Blazer the following April. Concerning Michael’s use of the Blazer to haul materials for his home remodeling, the testimony is vague as to how often this occurred. Again, the insurable interest must exist at the time of the loss, and there was no proof that the need for building materials for home renovations would be regular and ongoing. While Michael may have lent Brian his ear after the theft, which may have caused him some inconvenience, this cannot be characterized as a “lawful and substantial economic interest in the safety or preservation” of the Blazer, nor can Michael’s remittance of the premiums for Brian.
We find the case referred to by the trial judge in support of his reasons, Stokes v. Republic Underwriters Insurance Co., 387 So.2d 1261 (La.App. 1st Cir.1980), distinguishable. In Stokes, we held that a niece, who paid no rent while living in her aunt’s house but who had been given permission by her aunt to stay in the house as long as she lived and to do whatever she wanted with it, had an insurable interest. The niece lived in the house for nine years before fire destroyed it. We determined that there was an insurable interest because the niece would necessarily be subject to a pecuniary loss if she were unable to live in the house for life, and because she had the rights of occupancy and control. In the instant case, Brian only gave Michael use of the Blazer if Michael were able to provide him with a substitute vehicle; thus, Michael’s right to use the Blazer was conditional, and was clearly not a right of unlimited use such as the niece’s in the Stokes case, where the niece was practically given the house. As earlier stated, Michael did not demonstrate that he suffered any pecuniary loss from the theft of the Blazer; he and his wife owned two other cars, and his decision to lend Brian one of them when the Blazer was stolen merely caused him inconvenience, not pecuniary loss.
Finally, in brief, counsel for Michael refers to the $2,000 |7Michael lent to his father for the Blazer’s purchase as giving him an insurable interest. Yet, Michael lent this money to his father, not Brian, who was totally unaware of the loan, and both Michael and his father testified that the loan was considered repaid as of the time of trial.
Because we have determined that the trial judge erred in finding that Michael had an insurable interest, we need not consider the remaining assignments of error.
For these reasons, the judgment in favor of Michael Giddens against USAA is reversed. Costs of this appeal are to be paid by Michael Giddens.
REVERSED.

. The plaintiffs' petition incorrectly named the defendant as USAA Property and Casualty Insurance Company; the defendant's correct name is United Services Automobile Association.

. According to the petition, Michael loaned the purchase price of the Blazer to Brian, and according to statements given to USAA representatives by Michael after the theft, Michael was a lienholder. However, at trial, the testimony showed that when the Blazer was purchased, only Michael and his father knew of the $2,000 loan, and both testified that they considered it repaid. Michael obtained the $2,000 in cash from his safety deposit box, although the testimony is contradictory regarding when he lent it to his father.