G. CURRIE DUNCAN, President, &c. for the use and benefit of GEORGE WINGFIELD & CO. v. SUN MUTUAL INSURANCE COMPANY.

If, upon a general survey of the provisions of the policy and the circumstances under which it was procured, it appears that the intention of the company was to insure for the benefit of any person in interest, although not named, the common interest of the parties shall not be defeated for the want of technical or even customary phrases. If, on the other hand, the most natural construction of the policy is, that the party named as the assured only sought to protect his own interest, the contract is not to be extended so as to cover the interest of a third person.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J. *Hamner & Hays* and *Logan Hunter,* for plaintiff. *J. A. Maybin,* for defendants and appellants.

SPOFFORD, J. This suit is upon a fire policy to recover a loss upon certain packages of wine.

It is brought by *George Currie Duncan,* in his quality of President of the New Orleans and Carrollton Railroad Company and the Jefferson and Lake Pontchartrain Railroad Company, for the use and benefit of *George Wingfield & Co.,* against the Sun Mutual Insurance Company.

It is alleged that the wine belonged to *Wingfield & Co.,* by whom it was deposited in the railroad company's depôt at Tivoli Circle, in New Orleans, thence transported for hire in the plaintiff's cars to their depôt or wharves on the Lake shore, and there burnt and lost.

The defendants contend that they insured nobody against loss but the railroad company; that there is no privity of contract between them and *Wingfield & Co.,* for which reason that firm has no right of action; and that the railroad company has no right of action, because it has lost nothing.

By the terms of the policy, the defendants covenanted to "insure *George Currie Duncan*, President of the New Orleans and Carrollton Railroad Company, and for the Jefferson and Lake Pontchartrain Railroad Company *against loss and damage by fire on merchandize*, being such as may be placed in the depôts hereinafter named, for conveyance to and from the city to Lake Pontchartrain, to wit: on merchandize contained in the depôt at Tivoli Circle, to the amount of $3000; on merchandize contained in the depôt at the Lake end of the Jefferson and Lake Pontchartrain Railroad, to the amount of $5000. The risk in the cars is also to be covered by this insurance to the extent of the amount of this policy, to wit: $8000, for one year; and the said company do hereby promise and agree to make good *unto the said insured*, their executors, administrators and assigns, all such loss or damage, not exceeding in amount the sum hereby insured, as shall happen by fire to the property, as above specified, during one year, &c., the said loss or damage to be estimated according to the true and actual value of the said property at the time it shall happen, &c., &c."

The usual condition is annexed to the policy, that "goods held in trust or on commission are to be declared or insured as such, otherwise this policy will not cover such property."

No such words as "for whom it may concern," or "in trust for," are employed in the policy. It is true that there is nothing sacramental or indispensable in these ordinary phrases. If upon a general survey of the provisions of the policy and the circumstances under which it was procured, it appears that the intention of the company was to insure for the benefit of any person in interest, although not named, the common interest of the parties shall not be defeated for the want of technical or even customary phrases. If, on the other hand, the most natural construction of the policy is, that the party named as assured only sought to protect his own interest, the contract is not to be extended so as to cover the interest of a third person. Thus, it is held that a commission merchant who is insured against loss by fire upon "goods, as well the property of the insured as held by him on commission," in a certain store, may recover in his own name the value not only of his own goods destroyed by fire but of those of his constituents in the same store. *DeForest* v. *Fulton Fire Insurance Company*, 1 Hall, 100.

But the general rule is thus stated by Mr. Phillips : "Insurance made by a person in his own name only, without any indication in the policy that any other is interested, can be applied only to his own proper interest in the subject, or his interest as trustee." 1 Phillips, Ins., § 380.

In the present case the defendants only insured the railroad company against loss or damage by fire upon merchandize in certain of its depôts, or on the transit between them. It is true the policy does not imply that the merchandize must necessarily belong to the company. But no matter to whom it might belong, there is nothing in the policy or in the evidence to indicate that the defendants intended to do anything more than indemnify the railroad company against the loss or damage the company might sustain from the destruction or deterioration of such merchandize by fire. There is nothing in the circumstance of a railroad company taking out such a policy to lead the underwriters to suppose that the company sought anything beyond its own protection. There is no allegation or proof of a usage of railroad companies to insure for the benefit of their customers, nor of a contract with *Wingfield & Co.*, or

instructions from them to insure, nor of a payment of this loss by the plaintiff to *Wingfield & Co.*, nor even of a liability to pay it, or an undertaking on its part to warrant against all losses by fire.

On the other hand, that the company might have an insurable interest in goods intrusted to it by bailors for transportation is clear. The doctrine upon this subject is well stated by Mr. Angell in his treatise on Fire and Life Insurance, § 77: "An inland carrier will, in general, have an insurable interest and a right to provide an indemnity against such accidents to the property placed in his hands, *as will render him liable under his contract.* Thus, it it was held that common carriers along the line of a canal had an insurable interest to the full value of all the goods placed in their hands which they might protect under the general words of insurance ordinarily employed." But in the following section of the same treatise it is shown that the practice is to allege that the goods intrusted to him as a common carrier were consumed by fire, and that the assured thereby became liable to pay to the respective owners a sum equal to that named in the policy.

It was remarked by Mr. C. J. Jones in the case of *DeForest* v. *Fulton Fire Insurance Company*, already cited from Hall's Reports, that "a carrier may insure the goods he contracts to carry ; yet he has neither the legal title nor the beneficial interest in them; but he is responsible for their loss. His insurance is upon the goods ; yet his indemnity is against the consequences of his implied guaranty for their safe carriage, and not against the loss or deterioration of the property by the perils insured against."

As the interest of *Wingfield & Co.* in the wine was not covered by the policy in this case, even by implication, it follows that the railroad company is the real plaintiff. This was also asserted by counsel representing that side, on the oral argument. And as the company did not own the wine, it should show some loss or liability of its own on account of fire to authorize a recovery ; for the insurance only promised to indemnify the company for its own loss or damage by fire.

The testimony is that a burning steamboat came suddenly against the wharf where the goods were deposited and set them on fire, and that it was impossible to save them. So far as the evidence goes in this case this would seem to have been an accidental calamity beyond the control of the company or its servants. And the Article 2725 of our Civil Code declares that " carriers and watermen may be liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental or uncontrollable events."

As there is neither allegation nor proof that the railroad company, which alone was insured, has sustained any loss or incurred any liability to *Wingfield & Co.* or any other person, by reason of the destruction of the wine which belonged to *Wingfield & Co.* there should be a judgment of non-suit.

It is, therefore, ordered and decreed, that the judgment of the District Court be avoided and reversed, and that there be judgment against the plaintiff as in case of non-suit, he paying costs in both courts.