362 So.2d 740 (1978)
Doris BONADONA, Plaintiff-Appellee-Relator,
v.
Mary Viola Collins GUCCIONE, Leroy E. Kane and Mary F. Kane, Individually and Mary Viola Collins Guccione, Leroy E. Kane and Mary F. Kane, d/b/a DeLuxe Motel and the Travelers Insurance Co., Defendants-Appellants-Respondents.
No. 61734.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*741 J. Terrell Heath, New Orleans, for plaintiff.
Grayson H. Brown, New Orleans, for defendants.
TATE, Justice.
An insurance policy covered liability for injuries arising out of operation of a motel. The policy was originally issued with the owners and then-operators of the motel as named insureds. When the motel was leased to tenant-operators, the policy was renewed, with the tenants paying the premiums, but with no formal change or addition to the named insured (although the policy covered the same premise and risks). A motel guest was injured during the tenant's operation of the motel, and he sues the insurer to recover damages thereby sustained.
*742 The issue is whether the liability insurer, which accepted premiums from the tenant knowing of the change of motel operators, may nevertheless deny coverage because there had been no formal endorsement naming the tenants as operators of the motel instead of the owners.
The trial court had held the policy covered the tenant's liability and had granted judgment to the injured plaintiff. The court of appeal reversed, holding that the plaintiff had not proved a reformation of the policy by clear and convincing evidence. 354 So.2d 715 (La.App. 4th Cir. 1978).
We granted certiorari, 356 So.2d 436 (La. 1978), because we felt that the intermediate court had overlooked jurisprudence to the effect that, under the circumstances here shown, the insurer is estopped from denying liability for identical risks insured, when it has accepted premiums with knowledge of a change or addition of insureds.

(1)
The plaintiff, Mrs. Bonadona, was a guest at the DeLuxe Motel. While there, she was attacked by a black German shepherd dog maintained on the premises as a watchdog. After trial by jury, the plaintiff was awarded $9,500 for damages, including scarring.
The damages were awarded against the insurer ("Travelers") of the premises under an Owners, Landlords, and Tenants coverage of a general liability policy. By the policy, Travelers agreed to pay within stated limits all sums which the insured should become legally obligated to pay as damages arising out of the ownership, maintenance, or use of the motel premises.
The named insureds were "Mr. and Mrs. Sam Guccione d/b/a DeLuxe Motel." They had first obtained the insurance from the Travelers agent in 1958 and annually renewed the policy during their operation of the motel from 1958-70.
In 1970, however, they leased the motel for a term of five years to their daughter and her husband (the Kanes). (When the Gucciones left the premises, they left their German shepherd watchdog with the Kanes. For present purposes, we will accept the defendant's argument that they intended to transfer their ownership of the dog to the Kanes at that time.)
The insurance was renewed annually thereafter by the Kanes, but without the insurer's agent making any change formally naming the insureds as the tenants or without adding any endorsement showing that the tenants were now operating the motel. By her amended petition, however, the plaintiff had alleged that the policy issued to the Gucciones also insured the Kanes in their operation of the motel.
The accident occurred in May, 1974, while the Kanes were operating the motel. (Mr. Guccione had died in 1973, although the Travelers policy (paid for by the Kanes) still listed him as named insured, along with Mrs. Guccione.) No issue is raised as to the liability of the operators of the motel (the Kanes) for the damages caused by their watchdog.
The sole defense raised by Travelers is that it is not liable, since it insured solely the Gucciones (and not the Kanes) against liability arising out of the operation of the motel.
In rejecting this defense, the trial jury apparently accepted the undisputed testimony of Mrs. Guccione as to her conversations with the insurance agent and as to the subsequent actions by the Kanes.
From her testimony, admittedly skimpy but nevertheless undisputed, the jury could reasonably find that the Travlers agent informed her that the same insurance coverage as before was afforded the motel against injuries through the annual renewal of the policy by the Kanes. Tr. 13-14, 109-110. Her testimony additionally shows that the Kanes continued to pay the annual premiums for renewal of the liability coverage and indicates that the Travelers agent accepted these payments, knowing that they were made by the Kanes. Tr. 16-17, 113-14.
The defendant insurer did not introduce evidence disputing these facts. Nor did it, for instance, produce any evidence that its *743 risk was increased or substantially different because the Kane-tenants rather than the Guccione-owners operated the same motel. See Taylor v. Audubon Insurance Company, 357 So.2d 912, 914-15 (La.App. 4th Cir. 1978), certiorari denied, 359 So.2d 1307 (La. 1978).
Instead, the defendant insurer relies only upon its technical argument that the Gucciones were the sole named insured stated in the written policy and that therefore the policy could be reformed to show mutual mistake only by clear and convincing evidence, i. e., a degree of proof substantially greater than by the preponderance of evidence normally required in civil cases. In reversing the trial court, the intermediate court accepted this argument.

(2)
In reversing, the court of appeal overlooked jurisprudence which holds to the following effect:
Where an insurance policy is issued to cover certain risks of a named insured, if these risks are transferred to or assumed by another person who continues to pay the insurance premiums for their coverage, the insurer is bound by the knowledge of its agent and is estopped to deny its liability or the reformation of its policy to cover such risks incurred by the other person, when it has accepted the payment of premiums from or for him knowing of the change or addition of insured expressly or impliedly intended (even though there has been no formal endorsement reflecting the change or addition of insured) at least in the absence of proof that the risks thus insured would be different in nature or substantially greater than those initially covered by the policy.
See: Richard v. United States Fidelity and Guaranty Company, 247 La. 943, 175 So.2d 277 (1965); Perry v. Law, 334 So.2d 523 (La.App. 1st Cir. 1976), cert. denied, 337 So.2d 529 (La.1976); Anderson v. Sciambra, 310 So.2d 128 (La.App. 4th Cir. 1975), cert. denied, 313 So.2d 835 (La.1975); Herbert [Herbert] v. Breaux, 285 So.2d 829 (La.App. 1st Cir. 1973); Thibeau v. LeBlanc, 198 So.2d 707 (La.App. 1st Cir. 1967); Maggio v. State Farm Mutual Automobile Insurance Company, 102 So.2d 505 (on exception) and 123 So.2d 901 (on merits) (La.App. 1st Cir. 1958), cert. denied. See also: Taylor v. Audubon Insurance Company, 357 So.2d 912 (La.App. 4th Cir. 1978), cert. denied, 359 So.2d 1307 (La.1978); Diaz v. Cherokee Insurance Company, 275 So.2d 922 (La.App. 4th Cir. 1973); Urania Lumber Co. v. Insurance Co. of North America, 177 So.2d 640 (La.App. 3d Cir. 1965).
In reaching a contrary conclusion (i. e., in favor of non-coverage), the intermediate court relied upon decisions which held that clear and convincing evidence of mutual mistake or fraud was required to reform an insurance contract so that it covered a risk not covered or excluded by its terms: Ferguson v. Belcher and Son, 230 La. 422, 88 So.2d 806 (1956); Adams v. Ross, 300 So.2d 192 (La.App. 1st Cir. 1974); Rougeau v. State Farm Mutual Insurance Co., 262 So.2d 803 (La.App. 3d Cir. 1972).
These last-cited decisionsunlike the situation in the present case and those in the jurisprudence previously citeddo not involve claims against the insured only for a risk for which it had in fact accepted premiums (although from a person other than the named insured, in implied addition or substitution of that person as insured for the identical risk of the original named insured which the policy was initially issued to cover). Instead, these latter decisions involve instances where, after an accident, the insurer was sought to be held liable for an additional substantive risk than those covered by the policy, upon the contention that the insurer had by mistake not included it within the policy's coverage.
Ferguson, for instance, involved an insured's attempt to reform a policy so as to delete an explicit exclusion from liability for damages done through demolition work. Adams involved an attempt to reform a policy so as to void a clause providing that the policy did not apply to the use of nonowned automobile used by a person other than the named insured. Rougeau concerned *744 an attempt by a wife to reform an accidental death indemnity clause which showed (only) her as the beneficiary so that, instead, it insured her accident-killed husbanddespite the testimony of the insurance agent, found credible by the trier of fact, that the wife herself had requested the change of beneficiary.
In these last cited instances, after an accident, the contention was made that the policy insured an additional risk, which was not within its coverage as issued, and for which greater risk substantially different insuring or premium factors were applicable than those applicable to the risk actually insured by the written policy. In such an instance, clear and convincing evidence of mutual error or fraud should indeed be required to prove that the company had insured a substantially different risk than that expressed by the written policy.
The jurisprudence upon which we rely, however, concerns a distinguishable type-situation. Where in fact the insured is held liable for the identical risk for which it issued the policy (as here, for damages arising out of the operation of the motel), its consent to the change or addition of the person who pays the premiums as an insured is implied from its agent's knowledge of the substitution or addition of the riskbearer and premium-payer. To fail to recognize this substitution of coverage, even though no formal endorsement was issued by the agent in order to protect the person for whom the premium is paid, would permit the insurer to receive a windfall of the premiums received without its affording the coverage reasonably expected by the premium-payer to the actual or presumed knowledge of the insured's agent; and this, the jurisprudence holds, the insurer is estopped from claiming. Nor does the jurisprudence require these facts to be proved by other than a preponderance of the evidence, the normal burden of proof in civil cases.

(3)
No issue is raised as to the quantum of the jury award. It appears to be within the discretion of the trier of fact.
Accordingly, for the reasons stated, we reverse and set aside the judgment of the court of appeal, and we reinstate and affirm the judgment of the district court. All costs are to be paid by the defendant-appellant-respondent.
COURT OF APPEAL JUDGMENT SET ASIDE, TRIAL COURT JUDGMENT REINSTATED.