LABORDE, Judge.
On June 28, 1983, plaintiff, Bobbie Clark Kimball, filed suit against defendant, The Standard Fire Insurance Company of Hartford, Connecticut (Standard), seeking to collect fire insurance proceeds after a house purchased during her marriage to the late Guy W. Kimball was totally destroyed by fire. After the house burned, Michael H. Davis, who had been appointed provisional administrator of the Succession of Guy Kimball on June 24, 1980, gave notice to counsel for Standard that he intended to intervene in the suit on behalf of the succession. However, before a formal intervention was filed, Standard inadvertently sent a check directly to Mrs. Kim-ball’s attorney and the check was cashed. Subsequently, on November 30, 1983, an intervention was filed by Mr. Davis and tried without a jury.
The trial court found that Mrs. Kimball was the only named insured under the fire insurance policy and that she did not intend to cover any interest other than her own insurable interest. Accordingly, the trial court determined that the Succession of Guy Kimball was not entitled to a share of the insurance proceeds and dismissed the intervenor’s suit at intervenor’s cost.
On appeal, intervenor argues that the trial court erred in failing to find that a portion of the insurance proceeds belonged to the Succession of Guy Kimball. After reviewing the trial record and appellate briefs, we find no error in law or manifest error in fact. Thus, we affirm the judgment of the trial court. Insofar as we are favored with its well-reasoned findings, we annex those reasons hereto. Costs of this appeal are to be paid by intervenor, the Succession of Guy W. Kimball.
AFFIRMED.

CIVIL SUIT NUMBER 127,880

NINTH JUDICIAL DISTRICT COURT PARISH OF RAPIDES STATE OF LOUISIANA
BOBBIE KIMBALL VERSUS
THE STANDARD FIRE INSURANCE COMPANY OF HARTFORD, CONNECTICUT REASONS FOR JUDGMENT
May 3, 1989
The plaintiff in this suit and her three children were the owners in indivisión of the family home located at 200 High Country Drive in Pineville. This included a substantial two story brick and frame home which was the property of the plaintiff and her husband before his death, and thereafter of the plaintiff and his heirs.
The plaintiff’s husband was murdered in the home on March 8, 1980.[1] The plaintiff *548 and two male friends were later charged in the murder of Guy Kimball. The plaintiff subsequently pled guilty to conspiracy to commit murder. She was being held in the Rapides Parish jail when the house was totally destroyed by fire on the afternoon of May 19, 1983.
Subsequent to the fire, a thorough investigation was done. The results tend to indicate that there is a very high probability that the fire was started and accelerated by means of arson. There were also strong indications that the home was unoccupied and had been unoccupied for a substantial period of time when destroyed. There are also reports that the home had been stripped of furnishings and fixtures prior to its burning.
Nonetheless, when the home burned on May 19, 1983, there was a policy of fire insurance in effect with The Standard Fire Insurance Company of Hartford, Connecticut covering the home and its contents. The policy covered the term June 3, 1982, to June 3, 1983. It was a renewal of a policy which had been in effect prior, but was renewed by Mrs. Kimball in her name alone. The premium was paid by her.
When the home burned, a claim was made on the policy. While the claim was being investigated, a sworn statement was taken from Mrs. Kimball in the parish jail, with her attorney, Eugene Cicardo, Sr., present. At that time Mrs. Kimball said that she alone had purchased the policy, but that the home was owned by herself and the late Mr. Kimball. The insurer was put clearly on notice of other potential ownership interests in the property, although the insurance was issued solely in Mrs. Kimball’s name.
Subsequently, Mr. Michael Davis, who had been appointed the provisional administrator of the estate of Guy W. Kimball on June 24, 1980, gave notice to Mr. Edward Rundell, the attorney in Alexandria for Standard, that he intended to intervene in the insurance suit on behalf of the children who were owners in indivisión with Mrs. Kimball in the house. A formal intervention was not at that time filed.
Standard, then at this juncture in the occurrence of events in the history of the suit, did a curious, unexplained and nonsensical thing. It mailed a check for $110,-000.00 to Mrs. Kimball’s attorney, Eugene Cicardo, Sr. No answer rationally explains why this payment was made or why it was made directly to the plaintiff, bypassing Standard’s own attorney in Alexandria. The Court concludes that it was a mistake, suspicious, but not malicious. The insurer had nothing to lose through the intervention. It had nothing to lose in a concursus proceeding. It additionally had grounds for potentially avoiding payment on the policy; arson, vacancy. The payment appears not to have been incorporated in any settlement of the claim. Mrs. Kimball cashed the check, took the money and ran. She was not available for trial, and is apparently absent in violation of her probation terms.
The children of Bobbie Kimball and Guy Kimball have continued their intervention, bringing suit against Standard in an attempt to “raid” the proceeds of the claim payment to Mrs. Kimball. The theory of their right to do this is that they are owners in indivisión with Mrs. Kimball as heirs of Guy Kimball. Since the whole of the destroyed property is insured, they claim that a proportion of the insurance policy reflective of their ownership interests is due to them.
In this suit this issue is greatly complicated by the unfortunate fact of the funds being gone. Mrs. Kimball has absconded with them, hence if monies are due to the intervenors under the insurance contract, the funds must come from Standard in excess of the policy payment previously made to Mrs. Kimball.
The Court determines that while the in-tervenors had an insurable interest in the insured property, that interest was not in fact insured. Mrs. Kimball by her actions showed an unequivocal intent not to insure the interests of the intervenors in the property, both before and after the loss. What *549 is more, under the usufruct granted to Mrs. Kimball under La.C.C. Article 890 it would appear that the intervenors had very little interest in the property. Their interest being an undivided partial one, subject to usufruct for life or until the remarriage of Mrs. Kimball, a woman in her low thirties. The Court feels that Mrs. Kimball was entitled to insure the full value of the property.
Although neither party cited this authority, the crowning blow seems to come from Article 617 of the Louisiana Civil Code which reads:
“When proceeds of insurance are due on account of loss, extinction, or destruction of property subject to usufruct, the usu-fruct attaches to the proceeds. If the usufructuary or the naked owner has separately insured his interest only, the proceeds belong to the insured party.”
The usufruct of the house as community property subject to Article 890 would convert to a usufruct of insurance proceeds on insured property subject to usufruct. In a real sense, this intervention is a premature claim. Mrs. Kimball’s Article 890 usufruct has metamorphosed into a usufruct of the insurance proceeds, a usufruct which does not terminate until her death or remarriage neither of which to the knowledge of the Court has occurred.
Additionally, the reasoning of the First Circuit enunciated in Hartford Insurance Company of Southwest vs. Stablier, 476 So.2d 464 (La.App. 1 Cir., 1985), leads to a conclusion that the intervention should not prevail, although emotion and equity might suggest otherwise.
Therefore, the Court is led to the abiding conclusion that the intervention should be dismissed with court costs assessed to the intervenors.
Alexandria, Louisiana, this 2nd day of May, 1989.
/s/LLOYD G. TEEKELL LLOYD G. TEEKELL District Judge Division “D”
Filed May 2, 1989.
/s/ Debra W. Boykin.

. [Plaintiffs husband was actually murdered on March 8, 1979.]