MAX N. TOBIAS, JR., Judge.
 

 hThe plaintiffs, Issa Haddad (“Haddad”) and Safari, Inc. of New Orleans (“SINO”), appeal from the trial court’s judgment granting summary judgment in favor of the defendants, American Tri-State Underwriters, Inc. (“American Tri-State”) and Certain Underwriters at Lloyds, London (“Lloyds”), dismissing all of the plaintiffs’ claims against these defendants with prejudice. For the reasons that follow, we affirm.
 

 The facts of this matter are not in dispute. The plaintiffs, Haddad and SINO, are owners of commercial property located at 3920 St. Bernard Avenue in New Orleans, including the building and certain
 
 *248
 
 business personal property contained on the premises that were used to operate a convenience store and deli known as “Safari Supermarket.” In December 2004, the defendant, Ali Elkhateeb (“Elkhateeb”), leased the premises and the business personal property and purchased all of the store merchandise from the plaintiffs in order to take over the running of the supermarket business. Following the lease and sale, other than collecting monthly rent, the plaintiffs retained no further business interest in the grocery; Elkhateeb operated Safari Supermarket as the sole proprietor. He was responsible for all debts and obligations incurred by the grocery business.
 

 |2The contract of lease contained the following provision:
 

 Insurance
 

 Lessee shall provide insurance coverage of at least $200,000 of insurance coverage for the store inventory and equipment.
 

 The lease did not specify that Elkha-teeb was to obtain this insurance coverage insuring the store inventory and the leased business personal property on behalf of, or for the benefit of, Haddad or SINO. Pursuant to the terms of the lease, Elkhateeb submitted a Commercial Insurance Application on behalf of an applicant he identified as “Safari Supermarket, Inc.” The application identified the nature of the business as a “grocery,” with a business mailing address of 3920 St. Bernard Avenue, New Orleans, Louisiana, and listed the contact person for the business as “Tarek or Ali.” The application was devoid of any reference to either Haddad or SINO and made no request that either of the plaintiffs be listed as a named or additional insured under the policy. The application was signed solely by Elkhateeb. In accordance with the information contained in the insurance application, Lloyds issued a commercial property policy providing coverage for business personal property and business income insurance to the “grocery” business known as Safari Supermarket, Inc. located at 3920 St. Bernard Avenue in New Orleans, Louisiana, with effective dates of 17 May 2005 to 17 May 2006.
 

 All of the business personal property and inventory used in the operation of Safari Supermarket was severely damaged during Hurricane Katrina due to flooding and/or looting. In October 2005, Elkha-teeb’s accountant, David A. Sewell (“Se-well”), submitted a property damage claim to American Tri-State on |3behalf of Elk-hateeb, along with an executed “Full Power of Attorney” in favor of Sewell giving him authority to handle the property claim on Elkhateeb’s behalf.
 
 [1]
 

 Following submission of Safari Supermarket’s property damage claim, Crawford Claims Management Services conducted a thorough investigation and determined that the majority of the inventory lost and the damage to the business personal property resulted from burglary and vandalism occurring prior to any flooding of the supermarket. Consequently, based upon Crawford’s investigation and findings, Lloyds authorized payment to the named insured under the policy in the amount of $381,483.16, with a portion of the payment being made for lost and/or damaged business personal property, including shelves, coolers, cash registers, and other items used in the daily operation of the store. American Tri-State received the settlement funds from Lloyds on 23 May 2007,
 
 *249
 
 and pursuant to Sewell’s instructions, forwarded Sewell a settlement check issued and made payable to “Ali Elkhateeb d/b/a Safari Supermarket.”
 

 The plaintiffs thereafter filed suit against American Tri-State and Lloyds
 
 [2]
 
 seeking recovery of that portion of the property insurance proceeds under the Lloyd’s policy that were paid exclusively to Elkhateeb for damage to the business personal property actually owned by the plaintiffs even though used by Elkhateeb in the daily operation of Safari Supermarket. Specifically, the plaintiffs aver the negligence of American Tri-State and Lloyds in distributing the settlement proceeds solely to Elkhateeb. Additionally, they contend that had a proper investigation into Elkhateeb’s claim been conducted by reviewing the written ^contact of lease, Haddad and/or SINO would have been identified as the “true parties in interest” entitled to the business personal property proceeds under the Lloyd’s policy as they were the actual owners of the damaged and/or lost business property for which Elkhateeb received payment.
 

 American Tri-State and Lloyds answered the plaintiffs’ petition and moved for summary judgment on the basis that payment made solely to Elkhateeb d/b/a Safari Supermarket was proper because Elkhateeb had an insurable interest in all of the damaged and/or lost property which was used in the daily operation of the grocery store even though the plaintiffs actually owned the business personal property. Additionally, the defendants argued that, because neither Haddad nor SINO were identified or requested to be included as named or additional insureds under the policy, neither American Tri-State nor Lloyds breached any legal duty, contractual or otherwise, to the plaintiffs by issuing payment exclusively to Elkhateeb, the sole operator of Safari Supermarket.
 

 On 1 December 2009, the trial court granted summary judgment in favor of American Tri-State and Lloyds, dismissing all of the plaintiffs’ claims against them, with prejudice. On 10 December 2009, the judgment was designated as a final judgment. Thereafter, Haddad and SINO timely filed the instant appeal.
 

 A reviewing court examines summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate and, thus, asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a ^matter of law.
 
 Smith v. Our Lady of the Lake Hospital, Inc.,
 
 93-2512 (La.7/5/94), 639 So.2d 730, 750.
 

 In their first assignment of error, Haddad and SINO contend that American Tri-State and Lloyds legally “waived its right to pay policy proceeds to the named insured when it knowingly chose to pay proceeds to Ali Elkhateeb, someone other than the named insured in the policy.” We disagree.
 

 The plaintiffs posit that Lloyds failed to pay the policy proceeds to the named insured. The record establishes that, at the time the insurance policy was procured (and at the time of the loss), Elkhateeb was the sole proprietor and operator of the grocery business, Safari Supermarket, and that he used the- fictitious business name, Safari Supermarket, Inc., when he applied for the commercial business policy. The
 
 *250
 
 record further establishes that, in the application for insurance, Elkhateeb listed “Tarek or Ali” as the contact persons and that only Elkhateeb alone signed the policy application. The record is devoid of any evidence that Elkhateeb or Haddad requested that Haddad or SINO be named insureds or additional insureds under the policy.
 

 In his deposition, Haddad conceded that he never communicated with American Tri-State or Lloyds at any time prior to the loss. Haddad also acknowledged that after December 2004, he and SINO no longer maintained any business interest in the daily operations of Safari Supermarket other than to collect the monthly rent for the use of the building and business personal property. Haddad further conceded that Elkhateeb owned the store’s entire inventory and that Elkhateeb needed and utilized all of the lost and/or damaged business personal property that Elkhateeb insured in the daily operations of Safari Supermarket. By | fithe terms of the written contract of lease between Elkhateeb and Haddad, Elkhateeb was contractually obligated to “provide insurance coverage of at least $200,000 of insurance coverage for the store inventory and equipment.” Elkhateeb was not contractually obligated to obtain commercial property insurance coverage on behalf or for the benefit of either Haddad or SINO in this case.
 

 It is undisputed that Safari Supermarket, Inc. did not exist as an incorporated business, but rather, was merely a fictitious business name Elkhateeb used to operate the supermarket. Louisiana has a penal statute that prohibits a “person” from transacting business under an assumed name or under any designation, name or style, corporate or otherwise, other than the real name of the individual conducting the business, “unless the person registers the name in the parish or parishes where he intends to conduct business.” La. R.S. 51:281. The record on appeal is silent as to whether Elkhateeb complied with the registration requirements of the statute. However, the object of La. R.S. 51:281 is to protect the public from fraud, deceit, and false misrepresentations by the use of names similar to other trade names, which infringe upon the goodwill of an established business and tend to confuse the public.
 
 House of Lights, Inc. v. Diecidue,
 
 222 So.2d 603, 607 (La.App. 4th Cir.1969). Even though a person who violates La. R.S. 51:281 may be fined and/or imprisoned, a party contracting with him may not use the fact of the violation of the statute as a defense to avoid payment pursuant to a contract.
 
 See MAS Nursing, Inc. v. Burke,
 
 523 So.2d 909, 912 (La.App. 3rd Cir.1988). Accordingly, absent fraud or misrepresentation, which have not been alleged in the instant ease, even though the application for insurance named Safari Supermarket, Inc. as the insured, Lloyds could not have avoided payment of the 17policy proceeds to Elkha-teeb, a sole proprietor doing business as Safari Supermarket, on the basis of a violation of La. R.S. 51:281.
 

 Additionally, Louisiana law recognizes two kinds of persons: natural persons and juridical persons. La. C.C. art. 24. A juridical person is defined as an entity to which the law attributes personality, such as a corporation or a partnership.
 
 Id.
 
 In contrast to a corporation or partnership, a sole proprietorship is not a legal entity. It is merely a designation assigned to a manner of doing business by an individual who is solely responsible for all of the debts and obligations of the business. No legal distinction exists between the individual and the business.
 
 Robinson v. Heard,
 
 01-1697, p. 4 (La.2/26/02), 809 So.2d 943, 945-946.
 

 
 *251
 
 The record establishes that Elkhateeb operated Safari Supermarket as a sole proprietor and, as such, he and the business were one and the same. Consequently, we find that payment of the policy proceeds by Lloyds to “Ali Elkhateeb d/b/a Safari Supermarket” constitutes payment to the named insured per the application for insurance, Safari Supermarket, Inc. The plaintiffs’ first assignment of error is without merit.
 

 In the plaintiffs’ second and third assignments of error, Haddad and SINO contend that American Tri-State and Lloyds failed to recognize their ownership interest and insurable interest in the equipment and other movables involved in the operation of Safari Supermarket when American Tri-State and Lloyds failed to properly pay certain policy proceeds in accordance with the insurable interests of Haddad and SINO. We disagree.
 

 Louisiana law is clear that an insured must have an insurable interest in the property in order to recover on an insurance policy.
 
 Young v. State Farm Fire &
 
 Is
 
 Casualty Ins. Co.,
 
 426 So.2d 636, 640 (La.App. 1st Cir.1982). The insurable interest must exist not only at the time the policy is written, but also at the time of the loss.
 
 Armenia Coffee Corp. v. American Nat. Fire Ins. Co.,
 
 06-0409, p. 9 (La.App. 4 Cir. 11/21/06), 946 So.2d 249, 254.
 

 La. R.S. 22:853,
 
 [3]
 
 which defines “insurable interest,” provides:
 

 A. No contract of insurance on property or of any interest therein or arising therefrom shall be enforceable except for the benefit of the persons having an insurable interest in the things insured.
 

 B. “Insurable interest” as used in this Section means any lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage.
 

 Haddad and SINO argue that because they retained ownership of the equipment and other movables used by Elkhateeb in the daily operations of Safari Supermarket, they, and not Elkhateeb, maintained an insurable interest in the business personal property. To the contrary, the statute does not require ownership of the property as an element of an “insurable interest.”
 
 Young,
 
 426 So.2d at 640. It is well-settled in Louisiana that any person has an insurable interest in property, by the existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, regardless of whether he has or does not have title in, or a lien upon, or possession of the property itself.
 
 See Armenia Coffee Corp. v. American Nat. Fire Ins. Co.,
 
 06-0409, pp. 8-10, 946 So.2d at 254-255. The authorities uniformly hold that there may be several distinct interests that may be insured, and that an interest may exist in several people at the same time.
 
 See
 
 44 C.J.S. Insurance § 180, p. 878; Appleman, Insurance Law and Practice, Vol. 4, § 2124; Couch on Insurance 2d, Vol. 3, § 24:14. We are aware of no Louisiana case to the contrary, and certainly La. R.S. 22:853, relating to insurable interest on property imposes no limitation on multiple insurable interests.
 
 See Kimball v. Standard Fire Ins. Co. of Hartford, CT,
 
 578 So.2d 546, 547 (La.App. 3d Cir.1991);
 
 Hartford Ins. Co. of Southeast v. Stablier,
 
 476 So.2d 464,
 
 *252
 
 466 (La.App. 1st Cir.1985);
 
 Miller v. Hartford Fire Ins. Co.,
 
 412 So.2d 662, 667 (La.App. 2d Cir.1982);
 
 Franks v. Harper
 
 141 So.2d 690, 694-695 (La.App. 3d Cir. 1962). In short, even if we determined that Haddad and/or SINO possessed an insurable interest in the business personal property that the Lloyds policy insured, such does not preclude a finding that Elk-hateeb d/b/a Safari Supermarket also had an insurable interest in the same property.
 

 Although Elkhateeb did not own the premises or business personal property, other than the inventory or stock, at the time he procured the insurance, he was a lessee and in possession of the property. No dispute exists that Elkhateeb used and depended upon each and every item of lost and/or damaged business personal property located in the store in the daily operation of the supermarket. Accordingly, we find that Elkhateeb, who had the right to possess the premises and to use the business personal property, had a significant and substantial economic interest in preserving the damaged and/or stolen business personal property and that he was subject to pecuniary loss due to his inability to operate his grocery without the property, sufficient to constitute an insurable interest.
 
 See Stokes v. Republic Underwriters Ins. Co.,
 
 387 So.2d 1261, 1262-1263 (La.App. 1st Cir.1980). We further find that this insurable interest existed both at the time | inElkhateeb procured the insurance covering the business personal property and at the time of loss.
 

 If the most natural and obvious construction of the policy is that the party named as the insured only sought to protect his own interest, the contract cannot be extended so as to cover the interest of a third person.
 
 Duncan v. Sun Mut. Ins. Co.,
 
 12 La.Ann. 486 (1857). Moreover, as cited by the plaintiffs in their brief, a person who is not either a party to the insurance contract or one for whose benefit it was written is not entitled to a share of the insurance proceeds by the mere fact that he has an insurable interest in the property.
 
 Stablier,
 
 476 So.2d at 466. Nothing in the record suggests that Elkha-teeb ever identified or requested that either Haddad and/or SINO be named as insureds or as additional insureds under the Lloyds’ policy. The lease provides only that the “Lessee shall provide insurance coverage of at least $200,000 of insurance coverage for the store inventory and equipment.” The lease is silent as to any obligation imposed upon Elkhateeb to name Haddad and/or SINO as insureds or additional insureds under any policy of insurance that the lessee might procure. It is undisputed that Elkhateeb obtained a policy of commercial insurance with Lloyds through American Tri-State as required by the lease, insuring “Safari Supermarket, Inc.,” and providing coverage for the equipment and inventory located in the premise. Neither Haddad nor SINO were parties to this insurance contract. It is further undisputed that Elkhateeb was the sole proprietor and operator of Safari Supermarket at the time of the loss.
 

 Based upon our review of the record, we find no genuine issue of material fact exists and, as a matter of law, (a) Elkhateeb possessed an insurable interest in the business personal property owned by Haddad and/or SINO both at the time he procured the policy and at the time of loss; (b) the lease agreement did not require |nElkhateeb to procure insurance coverage to insure the interests of Haddad and/or SINO; and (c) no evidence is presented to suggest that Elkhateeb procured commercial liability insurance coverage through American Tri-State for any other reason than to solely protect his own interest in the business personal property and not the interests of Haddad and/or SINO.
 
 *253
 

 See
 
 La. C.C. arts. 1846-1848. Consequently, a determination that Elkhateeb d/b/a Safari Supermarket had an insurable interest in the property insured under the Lloyds’ policy, American Tri-State properly issued payment for the damage and/or loss of the property to Elkhateeb d/b/a Safari Supermarket, the named insured under the policy. As neither Haddad nor SINO were parties to the insurance contract, and even though they may have also possessed an interest in the lost and/or damaged property insured thereunder, they were not entitled to payment of any the proceeds of the Lloyds’ policy. It is a well-established general principle of law that a policy of insurance is a personal contract between the insurer and the insured. A person who is neither a party to the insurance contract nor one for whose benefit it was written is not entitled to a share of the insurance proceeds by the mere fact that he has an insurable interest in the property.
 
 Stablier,
 
 476 So.2d at 466;
 
 Franks v. Harper,
 
 141 So.2d at 694-695. Accordingly, we find the plaintiffs’ second and third assignments of error are without merit.
 

 In their fourth assignment of error, the plaintiffs contend that, pursuant to La. C.C. art. 2714,
 
 [4]
 
 any insurable interest Elkhateeb may have had in the business | ^personal property that he used in the daily operation of Safari Supermarket terminated on the date of Hurricane Katrina (the date of loss) because the lease terminated by operation of law on this date. According to the plaintiffs, because Elkha-teeb did not possess an insurable interest in the insured property
 
 after
 
 the loss, they should have received payment of the policy proceeds based on their ongoing ownership interest in the damaged and/or lost property.
 

 We find the case cited by the plaintiffs in support of their position,
 
 Gayle v. Commercial Union Assur. Co.,
 
 898 So.2d 604 (La.App. 1st Cir.1981), a case that does not involve the application of either La. C.C. arts. 2714 or 2715, is factually distinguishable from the case at bar. In
 
 Gayle,
 
 a fire completely destroyed a building that was leased by the lessee with an option to purchase. The lease, which required the lessee to “keep up the existing fire insurance policy” on the leased premises, contained a provision giving the lessee the option to purchase the building at any time during the existence of the lease. The lease further provided that, in the event the building was destroyed or damaged by fire or other unavoidable casualties causing the premises to be unfit for use by the lessee, the lessee could treat the lease as terminated and vacate the premises without notice if the lessor failed to repair the premises within 90 days.
 
 [5]
 
 The lessee procured the required insurance coverage naming the lessor as the loss payee under the policy. The leased premises were thereafter destroyed by fire prior to the
 
 *254
 
 lessee having exercised his option to purchase the building. More than 90 days following the destruction of the building, and prior to it being repaired, the lessee exercised his |1soption to purchase the premises and the lessor accepted. In the concursus proceeding that ensued, the issue was who was entitled to the fire insurance proceeds when a fire destroys a building subject to a lease-purchase agreement when the option to purchase is not exercised until after the premises are destroyed by fire. The court determined that the lessor, named as the loss payee on the policy, was entitled to the insurance proceeds since he was the owner of the building at the time it was destroyed by fire and that, pursuant to the terms of the contract of lease, the lessee’s remedy was to vacate the premises when they were not repaired within 90 days. The exercise of the option to purchase after the termination of the lease precluded the lessee from recovering under the policy as any interest he had in the building terminated when the lease terminated.
 

 In the case at bar, while the lease between the plaintiffs and Elkhateeb does not contain a fire damage provision like that found in
 
 Gayle,
 
 it does contain the following pertinent language regarding repairs to the property:
 

 The leased premises are accepted by lessee in their present condition. No ... repairs ... of any kind or nature will be done on the leased premises by the lessor. There shall be no abatement or reduction of any sums payable by lessee under this lease by reason of any ... repairs ... by lessee, nor shall lessee be entitled to terminate or cancel this lease or surrender possession of the leased premise by reason thereof.
 

 The lease contains no other provisions relative to the rights and obligations of the parties in the event of damage or loss occasioned to the leased property. Nonetheless, reviewing the lease agreement in its entirety, we find the above quoted contractual provision controls and that La. C.C. arts. 2714 or 2715 are inapplicable. It is only in the absence of a specific provision in the lease that either 114of the Civil Code articles would be applicable. Here, the express lease provisions state the rights and obligations of the parties relative to repairs to the leased property. A reasonable interpretation of this provision
 
 [6]
 
 (requiring the lessee to make all repairs), together with the insurance provision (requiring only that the lessee procure insurance and not requiring that the lessor be a named or an additional insured or a loss payee on the policy), is that the insurance was to be maintained solely for the benefit of Elkhateeb ,d/b/a Safari Supermarket to enable him to make the necessary repairs that he was required to make
 
 *255
 
 at his own expense by the terms of the contract of lease. Contrary to the plaintiffs’ assertion, the specific language of the lease contemplates that the lease would not terminate in the event of damage to the leased premises requiring repair. Accordingly, we conclude that the lease between the plaintiffs and Elkhateeb did not terminate by operation of law on the date of loss.
 

 Even if we were to consider the plaintiffs arguments under either La. C.C. art. 2714 or La. C.C. art. 2715, we find the plaintiffs have failed to show under La. C.C. art. 2714, that the property leased was
 
 totally
 
 lost or destroyed, or wholly expropriated such that the lease would be terminated by operation of law,
 
 [7]
 
 or liashown under La. C.C. art. 2715, that Elkhateeb sought or obtained dissolution of the lease. And, even assuming the destruction of the leased property resulted in a termination of the lease, the plaintiffs’ contention that “partial policy proceeds should have been paid to Issa Haddad/Sa-fari Inc. of New Orleans, who always had an insurable interest as owner of the equipment before and after the lease terminated” is incorrect. The fact that the plaintiffs may have owned all or part of the insured business property does not give them any rights to insurance proceeds under a policy where they are not designated as a named insured, an additional insured, or a loss payee, and where no evidence exists to suggest that the policy was procured for their benefit.
 

 The record reflects that SINO paid one of the insurance premiums due on the Lloyd’s policy.
 
 [8]
 
 In their fifth assignment of error the plaintiffs contend that, by accepting this single premium payment, American Tri-State and Lloyd’s are now estopped from denying the claim of SINO for insurance proceeds based on its insurable interest in the property. The plaintiffs seek reformation of the insurance policy to reflect their insurable interest.
 

 Louisiana courts have recognized that an insurance contract may be judicially reformed in limited circumstances, such as mutual error or fraudulent, negligent, or mistaken conduct on part of the agent issuing the policy.
 
 Farmers-Merchants Bank v. Employers National Ins.,
 
 553 So.2d 1088, 1089 (La. App. 3d Cir.1989). The equitable reformation of any insurance policy by judicial fiat | ^requires caution and restraint. In order to determine whether a party not named in a policy is entitled to coverage, a court must examine the record to ascertain the true intentions of the parties.
 
 Taylor v. Audubon Ins. Co.,
 
 357 So.2d 912 (La.App. 4th Cir.1978).
 

 In
 
 Taylor,
 
 this court allowed reformation of a policy to include coverage for someone other than the named insured. Pursuant to a credit sale, the purchaser-mortgagor acquired property from the owner. The fire insurance policy, originally procured by the owner, was not amended to reflect the credit sale and new owners; however, the new owners paid a portion of the premiums on the policy for
 
 *256
 
 four years. When the property was damaged by fire, the insurer, after learning that the named insured was not the sole owner of the property, tendered a check for less than the value of the policy, an amount calculated based upon the balance owed to the insured by the purchaser-mortgagor plus a refund of a portion of the previously paid premiums. The mortgagor sued the insurer for the remaining amount due under the policy. The insurer denied payment contending that, although the purchaser-mortgagor had an insurable interest in the property, such interest was not insured by them. In ruling that equitable reformation of the policy was proper, this court relied on the evidence that revealed that both the owner and mortgagor believed that the policy in effect at the time of the fire was for the protection of both parties and nothing in the policy suggested that it was issued solely to cover the remaining interests of the owner-mortgagee. Additionally, no conflicting claims between the mortgagor and mortgagee were presented and no evidence showed that the insurer would have written the policy any differently, or charged a [ 17different premium for continuation of the coverage if the named insureds included both the mortgagor and the mortgagee.
 

 Unlike
 
 Taylor,
 
 the policy in case at bar was not a “continuation” of existing coverage or an acquired policy procured by the owner, and
 
 all
 
 of the proceeds of the Lloyd’s policy were paid to the named insured.
 

 The plaintiffs rely on
 
 Bonadona v. Guccione,
 
 362 So.2d 740 (La.1978) to support their contention that they are entitled to reformation of the insurance contract. In
 
 Bonadona,
 
 the insurer issued a commercial liability policy that covered liability for injuries arising out of the operation of a motel. At the time the policy was originally issued in 1958, the named insureds were the original owners-operators. After operating the motel for twelve years, the owners leased the motel to tenant-operators. The existing insurance policy was renewed, with the tenants taking over the payment of the premiums. Though the tenants paid the policy premiums, no formal change or addition to the named insured was made. The policy covered the same property and the same risks. A motel guest was injured and filed suit. The insurer denied coverage on the basis that the policy insured solely the owners of the motel and not the tenant-operators, who were not named insureds in the policy, notwithstanding the insurer’s knowledge that the tenant-operators had assumed control of the motel and the insurer had continuously accepted the tenant-operators’ payment of the policy premiums for a period of four years. Under these circumstances, the Court held:
 

 Where an insurance policy is issued to cover certain risks of a named insured, if these risks are transferred to or assumed by another person who continues to pay the insurance premiums for their coverage, the insurer is bound by the knowledge of its agent and is estopped to deny its liability or the reformation of its policy to cover such risks incurred by the other person, when it has | ^accepted the payment of premiums from or for him knowing of the change or addition of insured expressly or impliedly intended (even if there has been no formal endorsement reflecting the change or addition of insured) at least in the absence of proof that the risks thus insured would be different in nature or substantially greater than those initially covered by the policy. (Citations omitted.)
 

 Id.
 
 at 743.
 

 We find the case at bar to be distinguishable from the
 
 Bonadona
 
 case on sev
 
 *257
 
 eral fronts. First, Elkhateeb, the tenant-operator of Safari Supermarket, and not the owner, Haddad, applied for and obtained the commercial property policy issued by Lloyd’s. Second, operation and control of the grocery business was transferred to and assumed by Elkhateeb
 
 prior
 
 to his applying for and procuring the Lloyd’s policy. Third, all of the policy premiums were paid by Elkhateeb d/b/a Safari Supermarket except for a single payment. Fourth, unlike the insurer in
 
 Bonadona
 
 who attempted to deny coverage, in the instant case, Lloyd’s paid all of the insurance proceeds due under the policy to the named insured. Finally, in
 
 Bo-nadona,
 
 the insurer accepted premiums directly from the tenant-operators on a continuous basis for a period of four years with knowledge that the tenants had assumed control of the insured premises from the named insured.
 

 Contrariwise, in the case at bar, the insurer accepted only one premium payment from Safari, Inc. of New Orleans, an entity that had no operation or control over the leased property at the time the premium was paid; the insurer had no knowledge, or any reason to have knowledge, that Safari, Inc. of New Orleans was the owner of the leased property at the time the insurer accepted the premium payment.
 
 [9]
 

 |1HIn Louisiana, mere payment or reimbursement of insurance premiums by a plaintiff to an insurance provider does not create a right to recovery under an insurance policy when the plaintiff is not the named insured and is nowhere named in the policy.
 
 See Kilson v. American Road Insurance Co.,
 
 345 So.2d 967, 969 (La.App. 2d Cir.1977). Consequently, the plaintiffs’ alleged payment of a single premium to Lloyds does not create an actionable legal relationship. Because the plaintiffs were not a party to the policy between Elkha-teeb and Lloyds, the plaintiffs have no right to recover as a named insured under the facts and circumstances of this case.
 
 [10]
 

 Since no relationship between the plaintiffs and American Tri-State and Lloyd’s exists, contractual or otherwise,
 
 [11]
 
 we find
 
 *258
 
 that the plaintiffs have no right to recover damages for breach of contract against American Tri-State or Lloyd’s, and have no right to recover proceeds under the Lloyd’s policy.
 

 ^CONCLUSION
 

 We find that American Tri-State and Lloyd’s are entitled to judgment as a matter of law and the lower court was correct in granting their motion for summary judgment. The judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . As a result of Hurricane Katrina, Elkhateeb evacuated to Baton Rouge. In October 2005, at the time Sewell was negotiating the property claim with American Tri-State on his behalf, Elkhateeb was scheduled to leave the country for several weeks.
 

 [2]
 

 . The plaintiffs also filed suit against Ali Elk-hateeb, individually, to recover the proceeds that they claim were wrongfully received by him. The two suits were consolidated by Order dated 7 May 2009.
 

 [3]
 

 . Acts 2008, No. 415, § 1, effective January 1, 2009, amended and reenacted Title 22 of the Louisiana Revised Statutes of 1950, the Louisiana Insurance Code, and directed the Louisiana State Law Institute to redesignate the provisions of Title 22 without changing the substance of the provisions. La. R.S.22:853 was renumbered from the former La. R.S.22:614.
 

 [4]
 

 . The plaintiffs incorrectly cite La. C.C. art. 2712 in their brief, which addresses the transfer of an immovable subject to an unrecorded lease. We can only assume, based on the arguments made in their brief, the plaintiffs meant to cite La. C.C. art. 2417, which provides that "[i]f the leased thing is lost or totally destroyed, without the fault of either party, or if it is expropriated, the lease terminates and neither party owes damages to the other,” or, alternatively, La. C.C. art. 2715, which states, in pertinent part, that "[i]f, without the fault of the lessee, the things is partially destroyed, lost, or expropriated, or its use is otherwise substantially impaired, the lessee may, according to the circumstances of both parties, obtain a diminution of the rent or dissolution of the lease, whichever is more appropriate under the circumstances....”
 

 [5]
 

 . Because the lease agreement contained this somewhat standard commercial lease 90-day repair provision, La. C.C. art. 2714 was inapplicable.
 

 [6]
 

 . Interpretation of a contract, such as the contract of lease at issue in the instant case, is the determination of the common intent of the parties. La. C.C. art.2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art.2046. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract, as a whole. La. C.C. art.2050. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art.2051. The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity, or custom is considered as incidental to the particular contract, or necessary to carry it into effect. La. C.C. art.2054. Equity is based on principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another. La. C.C. art.2055. We apply these interpretive rules to reach our conclusions herein.
 

 [7]
 

 . The record in this case indicates that the leased premises, including the business personal property and other movables, were flooded and looted in the days surrounding Hurricane Katrina, but there has been no declaration or showing that the property insured under the Lloyd's policy was
 
 totally
 
 lost and/or destroyed. The fact that the property has not been repaired and/or restored does not necessarily mean that the property is not repairable or capable of being restored or "totally lost and/or destroyed” as required by the law for the lease to be deemed terminated by operation of law.
 

 [8]
 

 . The signature on the check is illegible. One could not say that it was that of Haddad or Elkhateeb.
 

 [9]
 

 . Safari, Inc. of New Orleans is not mentioned anywhere in the lease agreement, the application for insurance, or the declarations page of the insurance policy. Haddad is solely mentioned as the lessor-owner of the premises.
 

 [10]
 

 . We note that the Louisiana Civil Code recognizes the creation of a contractual benefit for a third party (or, a stipulation
 
 pour au-trui
 
 ). "A contracting party may stipulate a benefit for a third person called a third-party beneficiary." La. C.C. art.1978;
 
 see also
 
 J. Denson Smith,
 
 Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui,
 
 11 Tul. L.Rev. 18, 33 (1936) ("[T]he third party beneficiary is never a party to the contract. He is never a promisee.”) In
 
 Joseph v. Hosp. Serv. Dist. No. 2 of Parish of St. Mary,
 
 05-2364, pp. 8-9 (La.10/15/06), 939 So.2d 1206, 1212, the Court set forth three criteria to consider in determining whether a valid stipulation
 
 pour autrui
 
 has been created: (1) the stipulation for a third party is manifestly clear; (2) there is certainty as to the benefit provided the third party; and (3) the benefit is not a mere incident of the contract between the promisor and the promisee. Applying these three criteria to the facts and circumstances in the case at bar, we conclude that neither Haddad nor SINO are third-party beneficiaries to the Lloyds' policy. No evidence in the record establishes that Elkhateeb intended to confer a benefit on Haddad or SINO; he procured the insurance coverage to protect his own insurable interest in the business personal property.
 

 [11]
 

 .In Louisiana, a plaintiff may sue under an insurance policy when he is a named insured, additional insured, or third-party beneficiary of the contract. "An insurance policy is a contract and, as with all other contracts, it constitutes the law between the parties.”
 
 Pareti v. Sentry Indem. Co.,
 
 536 So.2d 417, 420 (La.1988). Under Louisiana law, "absent a contrary statutory provision, actions
 
 ex con-tractu
 
 cannot be maintained against a party
 
 *258
 
 by an individual who is not a party thereto''.
 
 Randall v. Lloyds’ Underwriter’s at London,
 
 602 So.2d 790, 791 (La.App. 4th Cir. 1992). The policy itself nowhere mentions either Haddad or SINO and states without ambiguity that Safari Supermarket, Inc. is the named insured.